## ALLIANCE TRUST CO., Ltd., v. MULKEY.

No. 16080—Opinion Filed Jan. 12, 1926.

Rehearing Denied March 16, 1926.

**1. Mortgages—Agreement to Release Unenforceable Where Conditions not Met.**

A., being the owner and holder of a mortgage on lands in sections 3, 9, 10, 15, 16, 21, and 22, agreed with R. that if R. would secure the release of several mortgages held by M. B. and C., respectively, and would submit other lands in lieu of lands in sections 3, 9, and 10, and would do and perform, or cause to be done or performed, other acts necessary to complete a good and merchantable title to the lands substituted for 3, 9, and 10, that A. would release the lands in 3, 9, and 10, from its mortgage. Held, that in the absence of any specific, valid, and enforceable agreement between A. and M., relative to the release of M.'s mortgage on 15, 16, 21, and 22 a release of M.'s mortgage will not support an action by M. to have released the mortgage of A. on lands in sections 3, 9, and 10, in the absence of an express waiver of A. of the other conditions to be performed by R.

**2. Specific Performance—Agreement to Release Mortgage—Conditions not Performed.**

Where A., having a mortgage on certain lands, agrees with R. to release a portion of the lands, provided R. will substitute therefor other and different lands, and furnish an abstract of title showing good,

merchantable title to all the lands, and A., after examination of the abstract furnished, requires the performance of certain acts or conditions before the title will be deemed a good, merchantable title, the performance of one or more of such conditions, less than the whole number, in the absence of an express waiver of the conditions on the part of A., will not support an action for specific performance of a portion of the agreement by A., the original agreement being entire and indivisible.

### 3. Same—Failure of Consideration.

Where an agreement between A. and R.' is entire and indivisible, and there is a complete failure of consideration on the part of R., there is no meeting of the minds of A. and R., and there is nothing upon which to base an action for specific performance of any portion of the agreement between A. and R.

Error from District Court, Carter County; W. F. Freeman, Judge.

The Alliance Trust Company Ltd., filed its petition against John C. Mulkey and Elsie Mulkey and others, seeking to foreclose a mortgage on certain real property in Carter County. Judgment for foreclosure was rendered in favor of plaintiff on May 3, 1923, and on June 13, 1923, Elsie Mulkey filed her petition praying the release of a portion of the lands from the mortgage of the plaintiff, and from the judgment of foreclosure. Judgment for defendant Elsie Mulkey, and the plaintiff appeals. Reversed and remanded, with directions.

Dolman & Dyer, for plaintiff in error.

Brown, Brown & Williams, for defendant in error.

Opinion by RUTH, C. In June, 1918, John C. Mulkey, and Elsie Mulkey, being the owners of approximately 720 acres of land in sections 3, 9, 10, 15, 16, 21, and 22, in Carter county, executed their notes and mortgage in the sum of $16,000, on said lands in favor of the plaintiff, Alliance Trust Company. On May 9, 1922, default having been made in the payment of certain interest coupon notes, the plaintiff instituted foreclosure proceedings against the Mulkeys. Judgment was rendered for plaintiff, and in June, 1923, Elsie Mulkey filed her petition to vacate the judgment of foreclosure as to her, and as to certain lands in sections 3, 9, and 10, alleging she had never been served with summons in the original action, and further alleging plaintiff had agreed to release the lands in 3, 9, and 10, from its mortgage. Answers and replies having been filed, the cause came on for trial and the court

vacated the original judgment as to Elsie Mulkey for want of service of summons. The cause proceeded to trial upon its merits, and judgment was rendered in favor of Elsie Mulkey, releasing the lands in 3, 9, and 10, from the plaintiff's mortgage and the judgment of foreclosure.

Out of the mass of oral testimony, depositions, and exhibits, it appears John C. Mulkey and Elsie Mulkey were divorced sometime after they had executed the mortgage to plaintiff, and under the terms of the decree of divorce, John C. Mulkey was to convey the lands in 3, 9, and 10, to Elsie Mulkey free and clear of all incumbrances, she having originally held these lands in her own name. This of course would necessitate the securing of a release from the plaintiff as to this portion of the lands. John C. Mulkey gave Elsie Mulkey a mortgage for $7,500 on the lands covered by plaintiff's mortgage, also on a certain hotel property in Ardmore, Okla. In April, 1920, John C. Mulkey sold the lands in sections 15, 16, 21, and 22, to, J. E. Rabb, and for the purpose of clearing the title to 3, 9, and 10, John C. Mulkey and J. E. Rabb, together with one E. Dunlap, devised a plan whereby 3, 9, and 10, were to be cleared of plaintiff's mortgage as follows: Dunlap was to convey to Rabb 160 acres of land. Rabb was then to make application for a loan of $16,000, on a total of approximately 918 acres of land, including lands in 15, 16, 21, and 22, and excluding the lands in 3, 9, and 10, Rabb to furnish abstract of title showing merchantable title to all the lands, down to date and including the mortgage from Rabb to the plaintiff. In other words, they were to endeavor to have the plaintiff transfer its loan. Elsie Mulkey was to release her mortgage of $7,500. Plaintiff was to be induced to release its original mortgage executed by John C. and Elsie Mulkey in 1918, and to take a mortgage back on the Mulkey lands exclusive of 3, 9, and 10, the substituted mortgage, to also include the lands offered by Rabb and Dunlap. Dunlap interviewed G. A. Ramsey of Ramsey & Ramsey, loan brokers, who had been instrumental in placing the first Mulkey loan through the Holmes Mortgage Company of Kansas City, with a view to having the change made. Ramsey took the matter up with the Holmes Company, and it is in evidence the Holmes Company agreed to the substitution, provided Rabb furnished abstract of title acceptable to the plaintiff. Rabb filled out his application, agreeing to furnish abstract of title down to date, showing mortgage from Rabb to plaintiff. The notes and mortgage

were executed by Rabb; mortgage placed of record; the abstract extended to date and forwarded by Ramsey to the Holmes Company who submitted it to the attorneys for the plaintiff, and after examination, these attorneys prepared and the Holmes Company, forwarded a "requirement sheet" to Ramsey, showing some 18 things necessary to be done before the abstract would be approved. Numerous letters passed between Ramsey and the Holmes Company, and after about one year, the Holmes Company returned the notes, mortgage and a release of the Rabb mortgage, stating that because of the delay they did not believe the matter would ever be closed. However, the notes, mortgage and release were returned to the Holmes Company, and negotiations were again opened, and after one more year had elapsed, the Holmes Company wrote Ramsey, stating that they were fully satisfied the deal would never be closed; that the coupon interest notes were due and unpaid on the original mortgage; that through another mortgage deal, in which Dunlap was interested, they learned that more than a dozen judgments had lately been recorded against Dunlap, and the Alliance Trust Company insisted on a foreclosure proceeding, and this action resulted.

It is conceded by all parties that the title in Rabb was never perfected so the deal could be closed. As one of the steps necessary to perfect the title was the release of the Elsie Mulkey mortgage on 15, 16, 21, and 22, so the mortgage given by Rabb would be a first mortgage, as was the mortgage given by the Mulkeys, Dunlap interviewed Mrs. Mulkey and told her if she released her mortgage, he would secure a release of the original Mulkey mortgage on her portion of 3 9, and 10. Elsie Mulkey repeatedly denied at the trial that she had ever released her mortgage, and had no recollection whatsoever of having signed such a release.

Defendant alleges in her petition that Ramsey & Ramsey were the agents of the Alliance Trust Company, and it is insisted that the agents promised defendant that if she would release her second mortgage on 15, 16, 21, and 22, Ramsey would secure from the plaintiff a release of its first mortgage on 3, 9, and 10. It appears G. H. Ramsey and R. H. Ramsey, father and son, comprised the firm of Ramsey & Ramsey. G. H. Ramsey, who alone had conducted all the negotiations on the original loan, and afterwards on the attempted Rabb loan, died prior to the trial of this case, and R. H. Ramsey was called as a witness for Elsie Mulkey, and he testified that his firm never

was the agent of the plaintiff in any manner; that Ramsey & Ramsey were loan brokers, and when a loan was applied for, the application blank was filled out and sent by his firm to Holmes Company, or to some other mortgage company, and that company obtained the money wherever it was available; that in the original Mulkey mortgage, the Holmes Company obtained the money from the Alliance Trust Company, Limited, of Dundee, Scotland; that Ramsey & Ramsey had no connection in any manner with the plaintiff. Elsie Mulkey, called as a witness in her own behalf, testified as follows:

"Q. You say you talked with Mr. Ramsey relative to this release? A. Yes, sir. Q. Where did you talk to him relative to this release? A. Well, it was soon after the pasture land was sold to Mr. Rabb and to Mr. Dunlap. Q. Well, what did he say? A. That it would be released right away."

This was the extent of her conversation with G. H. Ramsey relative to this release, and upon which they seek to bind this plaintiff to release its first mortgage on 3, 9, and 10, provided defendant would release her second mortgage on 15, 16, 21, and 22. Defendant further testifies as follows:

"Q. Do you remember it was conditioned that you give a release on certain land? A. Yes, sir. Q. At that time did you know they had secured a release from you? A. No, sir. Q. You stated in your examination that you did not sign that release? A. No, sir. Q. Do you remember now signing that release? A. No, sir."

It appeared that the release purporting to have been signed by defendant was acknowledged by a notary public employed in the office of defendant's attorneys, yet defendant iterates and reiterates the statement that she never signed such a release.

"Q. It covers lands in section 16, but you did not give any such release as that? A. No, Sir. Q. And you did not sign any such release, A. No, sir."

She further testifies that she talked to Mr. Dunlap, and he told her if she would sign a release he would get a release for her, but she has no recollection of Dunlap ever bringing her a release to sign, and is positive she never signed such a release.

Apart from any question of agency of Ramsey or the Holmes Company, if any agreement was ever made between Ramsey and Rabb, and if any independent agreement was ever made between Ramsey and defendant, the consideration has wholly failed on the part of defendant and Rabb, according to the defendant's own testimony. Among the requirements of plaintiff's at-

torneys, before they would approve the title, was the release of the Elsie Mulkey mortgage, the release of the Bodovitz mortgage, the release of the Conservative Loan Company's mortgage, and 15 other requirements. Defendant alleges in her petition that a release of her mortgage was "among the requirements" made by the plaintiff before the proposed substituted Rabb mortgage would be approved. It is admitted that 17 of these requirements were never met or attempted to be met, and the only one attempted to be met was the release of the Elsie Mulkey mortgage, and as she swears positively that she never signed such a release, she thereby in effect pronounces such mortgage a forgery, if such is in existence. The original release was never introduced in evidence, and she had never seen the same, so the signature has never been identified. The notary public purporting to have taken the acknowledgment of Elsie Mulkey was not called as a witness. Dunlap testified that he does not remember whether he ever got a release from Elsie Mulkey or not, but he might have gotten it, and thinks he did, but will not say positively. His whole testimony is made up of replies that "I don't remember," "I have no recollection," "I might or might not."

We think, upon consideration of all the testimony in this case, the consideration for the transfer of the Mulkey mortgage to the lands substituted by Rabb and Dunlap has wholly failed, and Elsie Mulkey having admitted that she executed the notes and mortgage sued upon, and it not being controverted that default has been made in the payment thereof, the plaintiff is entitled to judgment foreclosing the mortgage, and the judgment of the trial court in vacating the judgment of foreclosure, in so far as it affected sections 3, 9, and 10, was error.

The judgment of the trial court vacating the judgment of foreclosure as to the lands, and in rendering judgment for the defendant releasing the lands in sections 3, 9, and 10 from the effect of plaintiff's mortgage, is reversed, and this cause is remanded, with the direction to the trial court to vacate its judgment for Elsie Mulkey releasing the lands in sections 3, 9, and 10 from the effect of plaintiff's mortgage, and to enter judgment for the plaintiff for foreclosure of its mortgage as prayed in its original petition.

By the Court: It is so ordered.